**SIGNED this 29 day of September, 2021.**



_____
**James P. Smith**
**Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 7 |
| | : | |
| JULIA MARIE HAAR, | : | Case No. 18-50476-JPS |
| Debtor | : | |
| | : | |
| WALTER W. KELLEY, TRUSTEE | : | |
| Plaintiff | : | |
| vs. | : | Adversary Proceeding |
| | : | No. 19-05001-JPS |
| DAVID P. HAAR, | : | |
| Defendant | : | |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

    For Debtor/Plaintiff:    Thomas D. Lovett
Kelley, Lovett, Blakey and Sanders, P.C.
P.O. Box 1164
2912-B North Oak Street
Valdosta, GA 31603-1164
Email: tlovett@kelleylovett.com

    For Defendants:    David L. Bury, Jr.
Stone & Baxter, LLP
577 Mulberry Street
Suite 800
Macon, GA 31201
Email: dbury@stoneandbaxter.com

Matthew S. Cathey
Stone & Baxter, LLP
577 Mulberry Street
Suite 800
Macon, GA 31201
Email: mcathey@stoneandbaxter.com

Thomas B. Norton
Stone & Baxter, LLP
577 Mulberry Street
Suite 800
Macon, GA 31201
Email: tnorton@stoneandbaxter.com

**MEMORANDUM OPINION**

In this adversary proceeding, Trustee seeks to avoid, as fraudulent conveyances, the transfer of two parcels of real property by Debtor to Defendant.  Before the Court is Defendant's Motion For Summary Judgment.[1]  Defendant and Trustee have each filed briefs on the legal issues presented.  The Court has considered Defendant's Statement of Material Facts, Trustee's response, the depositions on file, the legal arguments and the law.  The Court now publishes this memorandum opinion.

FACTS

The following facts are not in dispute.[2]  Debtor is Defendant's sister.  Defendant purchased real property at 110 Princeton Trace, Fayetteville, Georgia ("Fayetteville") in October 1989, using his own money.  Defendant married his wife in 1990 and they resided in this residence for a number of years.  He has since maintained it as rental property.

Defendant purchased real property at 160 Pruett Street, Riverdale, Georgia ("Riverdale") in April 1992, again using his own money.  Shortly after this purchase, Defendant began leasing this residence to Debtor.  Debtor paid rent to Defendant and made the utility payments until she moved in 2006.  Defendant has since maintained it as

---

[1] Trustee has not filed a cross-motion for summary judgment.

[2] Except as otherwise noted, the undisputed facts are taken from Def.'s Statement of Material Facts (ECF No. 48), Trustee's response (ECF No. 53) and Def.'s reply (ECF No. 58).

rental property.

Defendant and his wife separated in January 2005. Defendant signed quitclaim deeds dated March 28, 2005, conveying each property to Debtor. Defendant did not receive any consideration from Debtor. Each deed was recorded in the public property records of the respective counties on March 28, 2005. Debtor continued to reside at the Riverdale property and pay monthly rent to Defendant, who continued to maintain both the Riverdale and Fayetteville properties and pay the taxes, insurance and repairs.

Defendant's wife filed for divorce on May 10, 2005, seeking, in part, an equitable division of all marital property, including rental properties. Thereafter, Defendant and his wife reconciled their marital problems and the divorce proceeding was disposed of and closed on August 19, 2005.

Defendant advised Debtor to move out of the Riverdale property in 2006 because the residence and neighborhood were in poor shape.[3] Debtor moved to another property owned by Defendant and paid rent to him.[4]

Defendant and his wife moved to South Dakota in 2007 and returned to Georgia in late 2008. Defendant had been in discussions for some time with Debtor about her conveying the properties back to Defendant but was unable to do so due to logistical issues. On October 20, 2009, Debtor conveyed the properties back to Defendant. Defendant paid Debtor no consideration for the transfers. Defendant prepared the

---

[3] Def.'s Dep., ECF No. 48, Ex. A, at 54.

[4] Debtor moved to the "lake house" in Jasper County, Georgia where she continues to reside and pay rent to Defendant. Id. at 38, 61. This property is not involved in this adversary proceeding.

quitclaim deeds for the properties[5] which, after being signed by Debtor, were recorded in the public property records of the respective counties on October 20, 2009.

At all relevant times, and notwithstanding the transfers to Debtor, Defendant has been the sole party collecting rent on the properties, the sole party responsible for maintenance, real estate taxes, insurance and repairs, and the sole party reporting the properties on tax returns. Defendant's tenants, including Debtor, have paid monthly rent solely to Defendant and have made the utility payments.

Debtor filed a Chapter 7 petition on March 12, 2018. She listed on Schedule E/F an unsecured priority claim of $400 owed to the Internal Revenue Service ("IRS"). In fact, at the time of filing, she owed the IRS $449 for 2016 taxes, $10.46 for late filing penalty and $8.79 in interest for late payment of tax.

The notice of bankruptcy sent to creditors did not set a proof of claim deadline and requested that creditors not file a proof of claim because there appeared to be no property available to pay creditors.[6] Subsequently, notice was sent to creditors that assets had been recovered by Trustee and set April 9, 2019, as the deadline to file a proof of claim.[7] The IRS was served with both notices but did not file a proof of claim; nor did Trustee file one on behalf of the IRS.[8]

---

[5] Def.'s Dep. ECF No. 48, Ex.A, at 10, 13.

[6] Case No. 18-50476, ECF No. 6.

[7] Id., ECF No. 25.

[8] Fed.R.Bankr.P. 3004.

Debtor's Deposition[9]

In her deposition, Debtor testified that she and Defendant did not discuss personal or financial matters, including his divorce.[10] Debtor is uncertain when she first heard about Defendant's divorce, but it may have been after the divorce "happened."[11] Defendant did not tell Debtor why he was conveying the properties to her and she did not know his motives, thoughts, intentions or reasoning.[12] Defendant initiated the reconveyances of the properties from Debtor to him. She did not hold title to the properties in trust, under a trust agreement or pursuant to any written agreement with Defendant.[13] The properties were not given or gifted to her.[14] After the conveyances from Defendant, Debtor continued to pay rent to him on her residence in Riverdale even though the property was now in her name.[15] Debtor did not collect rent from any tenant while the properties were in her name.[16] She testified, "I was a renter and a renter only."[17]

As stated above, on October 20, 2009, Debtor conveyed the properties back to

---

[9] Def.'s Statement of Material Facts ECF No. 48, Ex. B.

[10] Id. at 13-15.

[11] Id. at 14-15.

[12] Id. at 7-8, 72.

[13] Id. at 9.

[14] Id. at 69.

[15] Id. at 69-70.

[16] Id. at 11.

[17] Id. at 7, 69.

Defendant. In her deposition, she testified that it was Defendant's decision, as the "owner" of the properties, that the properties went back to him.[18] Debtor conveyed the properties back because "they were not in my possession. The transfers or paperwork were his decisions and his decisions only."[19] Defendant asked Debtor to sign the deeds conveying the properties back to him.[20] Defendant initiated the paperwork, the transfers and "anything."[21] He told Debtor to, "meet [him] at the court. We're signing the papers over."[22]

Defendant's Deposition[23]

In his deposition, Defendant testified that he paid cash when he purchased the properties in 1990 and 1992.[24] He told Debtor that he was conveying the properties to her but did not tell her the reason and she did not ask.[25] Defendant had no verbal or written agreement with Debtor as to how long the properties would be in her name.[26] Defendant

---

[18] Id. at 12-13.

[19] Id. at 8.

[20] Id.

[21] Id. at 6.

[22] Id. at 72.

[23] Def.'s Statement of Material Facts ECF No. 48, Ex. A.

[24] Id. at 15.

[25] Id. at 23-24.

[26] Id. at 31-32, 35, 49-50.

testified, "It was my property all–all the time...She knew it, and I knew it..."[27] He testified that Debtor knew that she would eventually need to convey the properties back to him.[28] Defendant dealt with all tenant problems even when Debtor held title to the properties.[29] The insurance policies on the properties were not changed into Debtor's name, but continued to show Defendant as the owner.[30]

Defendant prepared the quitclaim deeds[31] that Debtor signed at the courthouses in the respective counties conveying the properties back to him.[32] Defendant paid the recording fees for the Fayetteville property. The record is silent as to who paid the recording fees for the Riverdale property.[33] During his deposition, Defendant gave several reasons why he conveyed the properties to Debtor.[34] For purposes of Defendant's motion for summary judgment, the response most favorable to the nonmoving party (Trustee)[35] is that Defendant was worried that his wife might try to take the properties if

---

[27] Id. at 50.

[28] Id. at 56-57.

[29] Id. at 30.

[30] Id. at 28-29.

[31] Id. at 10, 13.

[32] Id. at 11, 13-14.

[33] Id. at 12.

[34] Id. at 20, 22, 23, 59-60.

[35] In considering a motion for summary judgment, courts view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1311 (11th Cir. 2018).

Case 19-05001    Doc 65    Filed 09/29/21    Entered 09/30/21 08:57:12    Desc Main
                            Document      Page 9 of 20

she went through with the divorce and he was trying to protect properties that he had purchased with his own money.[36] Defendant did not transfer other properties to Debtor because they had mortgages or were joint properties acquired during his marriage.[37]

Defendant's attorney, his wife and her attorney were not aware that he had conveyed the properties to Debtor at the time the transfers were made.[38] Defendant's wife subsequently learned of the conveyances, but Defendant does not know when.[39] Defendant "picked" Debtor to convey the properties to because she was the only sibling living in Georgia.[40]

## Discussion

Trustee filed this complaint to avoid fraudulent transfers on January 2, 2019. Pursuant to 11 U.S.C. § 544(b)(1), Trustee seeks to avoid Debtor's October 2009 conveyances of the Fayetteville and Riverdale properties to Defendant and to recover the properties for the benefit of the estate.[41] Section 544(b)(1), in relevant part, gives Trustee the right to avoid any transfer of an interest of Debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502. In order to take advantage of the IRS' extended statute of limitations under 26

---

[36] Id. at 20, 23.

[37] Id. at 39-40.

[38] Id. at 25.

[39] Id. at 36.

[40] Id. at 26-27.

[41] 11 U.S.C. § 550(a)(1).

U.S.C. § 6502(a)(1), Trustee has selected the IRS[42] as his "triggering creditor."[43] Trustee is subject to the same defenses that would be applicable against the IRS. See Miller v. United States (In re All Resort Group, Inc.), 617 B.R. 375, 382 (Bankr. D. Utah 2020) (trustee subject to same defenses a transferee would have in state fraudulent conveyance action brought by the actual creditor).

Under section 544(b)(1), "applicable law" includes state fraudulent transfer law.[44] Kelley v. Speciate (In re Gregg), No. 11-4047, 2014 WL 3339595, at *4 (Bankr. M.D. Ga. July 8, 2014) (Laney, J.). In this case, Trustee, standing in the shoes of the IRS,[45] relies on section 18-2-74[46] of Georgia's Uniform Fraudulent Transfers Act (UFTA),[47]

---

[42] Most courts considering the issue agree that the trustee can step into the shoes of the IRS and pursue claims the IRS could pursue outside of bankruptcy. Gordon v. Webster (In re Webster), 629 B.R. 654, 674 (Bankr. N.D. Ga. 2021).

[43] Debtor's other unsecured creditors would be time barred from bringing an avoidance action under Georgia's UFTA. See § 18-2-79 (fraudulent transfer claim extinguished if not brought within 4 years after transfer was made). The parties disagree as to whether Trustee, stepping into the shoes of the IRS, is also time barred.

[44] Trustee states that he is not using, as applicable law, the Federal Debt Collection Practices Act (FDCPA) which has a six year time limit to file a claim after the transfer is made. 28 U.S.C. § 3306(1). Trustee's complaint would be time barred if brought under the FDCPA.

[45] The IRS can seek relief for a taxpayer's fraudulent transfer of property under the applicable state's laws. United States v. Evans, 340 Fed. Appx. 990, 992 (5th Cir. 2009) (citing Commissioner v. Stern, 357 U.S. 39, 45, 78 S.Ct. 1047, 2 L.Ed. 2d 1126 (1958)).

[46] Trustee has abandoned his effort to avoid the transfers under O.C.G.A. § 18-2-75. Trustee's Br. ECF No. 54 at 17, Trustee's Compl. ECF No. 1 at.3, ¶ 17-18.

[47] The UFTA became effective on July 1, 2002. Effective July 1, 2015, the Act was renamed the "Uniform Voidable Transfers Act". In this case, we must apply the version in effect at the time of the transfers in October 2009. See Interfinancial Midtown, Inc. v. Choate Constr. Co., 343 Ga. App. 793, 806 S.E.2d 255, 260 n.7 (2017). The UFTA and UVTA are nearly identical and the slight differences would not affect the Court's decision.

which allows a creditor to avoid a transfer made with actual intent to defraud creditors or a transfer for which the debtor did not receive reasonably equivalent value and where the debtor is left unable to pay her debts.

The parties have raised and briefed a number of issues, including (1) whether Trustee can step into the shoes of the IRS and use the ten year statute of limitations under 26 U.S.C. § 6502(a)(1); (2) whether Trustee's avoidance action is time barred by Georgia's four year extinguishment period under O.C.G.A. § 18-2-79; (3) whether the failure of the IRS to file a proof of claim is fatal to Trustee's case; (4) whether there is evidence to support an avoidance action for actual fraud under O.C.G.A. § 18-2-74; (5) whether Debtor received less than reasonably equivalent value for the transfers; (6) whether Debtor was or became insolvent or became unable to pay her debts as a result of the transfers; and (7) whether Debtor had an agreement with Defendant to hold the transferred properties in trust for Defendant. However, as will be explained below, it is unnecessary for the Court to resolve these issues.

Defendant argues that even if Trustee could otherwise avoid the conveyances, Debtor's interest in the properties would not be property of the estate because Debtor only held bare legal title which would confer no tangible economic value upon the estate. Defendant argues that the properties were held in constructive trust by Debtor.

A debtor's interest in property under 11 U.S.C. § 541(a)(1) is defined by state law at the time of the commencement of the case unless altered by applicable federal law or a countervailing federal interest. <u>Butner v. United States</u>, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979). Georgia law provides that:

> A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity.

O.C.G.A. § 53-12-132(a). Furthermore,

> In all cases in which a trust is sought to be implied, the court may hear parol evidence of the nature of the transaction, the circumstances, and the conduct of the parties, either to imply or rebut the trust.

O.C.G.A. § 53-12-133.

"It is well-established in the Eleventh Circuit that, by operation of § 541(d),[48] property held in a constructive trust does not become property of the estate under § 541(a)(1)." Kelley v. McCormack (In re Mitchell), 548 B.R. 862, 880 (Bankr. M.D. Ga. 2016) (Carter, J.) (citing City Nat'l Bank of Miami v. Gen. Coffee Corp. (In re Gen. Coffee Corp.), 828 F.2d 699 (11th Cir. 1987)). Further,

> "[A] debtor's prepetition transfer of real property's legal title to the sole holder of equitable title (pursuant to state law governing constructive trust) does not constitute a transfer of an interest of the debtor in property under [§ 544]."

Id. at 882. See also In re Cotton, No. A01-66915, 2004 WL 2983350, at *4 (Bankr. N.D. Ga. February 17, 2004).

Under circumstances similar to those in this case, state and federal courts in Georgia

---

[48] Section 541(d) of the Code provides, in part:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest,...becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

have recognized the existence of a constructive trust. For instance, in the case of McCollum v. McCollum, 202 Ga. 406, 43 S.E.2d 663 (1947), the court held that the plaintiff had stated a cause of action for the imposition of an implied trust on the tracts of property titled jointly in his name and in the name of the woman he erroneously believed was his legal wife (their marriage was annulled when it was discovered that her prior marriage to another had not be dissolved) where it was alleged that the plaintiff had supplied the major portion of the down payments for the properties, had paid the balance of the purchase prices and had expended large sums of money in making improvements on several parcels. The court held:

> An implied trust may arise from a payment of a portion of the purchase money. Hall v. Edwards, 140 Ga. 765, 767, 79 S.E. 852; 26 R.C.L. 1224, § 70. An implied trust results from the fact that one person's money has been invested in the land, and the conveyance taken in the name of another. It is a mere creature of equity. Berry v. Brunson, 166 Ga. 523, 529, 143 S.E. 761; 26 R.C.L. 1214, § 57. In Scott v. Taylor, 64 Ga. 506, 508, this court said: "The principle is well settled by the elementary writers, and numerous adjudicated cases, that when the purchase money is paid by one, and the legal title taken in the name of another the person named in the conveyance is but a trustee of him who paid the consideration.".

202 Ga. at 409-10.

In the case of Oliver v. Any and All Persons Unknown, No. 1:07-CV-02117, 2009 WL 2841244 (N.D. Ga. April 21, 2009), the mother told her daughter that if the daughter would purchase property for the mother to live in, the mother would make all of the payments on the property and would maintain the property until the mother died. The daughter purchased the property in 1985, in which the mother thereafter resided continuously, with the exception of one 4-month period. The mother made all of the monthly mortgage payments on the property, paid all of the utility bills and spent over $14,000 on

13

improvements to the property. There was parol evidence that both the daughter and the mother had made statements to the effect that the mother was the owner of the property. The court held:

> The Court finds that the implication of a constructive trust in favor of [the mother] is an appropriate remedy in this case. Georgia law provides that "[a] constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." Ga. Code Ann. § 53-12-93(a). ...
>
> A constructive trust is appropriate in this case. [The mother] invested a significant amount of money in the Property, as well as paying all mortgage, insurance and other expenses, with the understanding that she was the "homeowner." [The daughter] and [the mother] agreed that [the daughter] would purchase the Property for [the mother] to live in permanently so long as [the mother] took care of all of the expenses in connection with the Property. However, [the daughter] never transferred title to the Property and instead, took advantage of the arrangement in order to reap tax benefits to which she was not entitled. Under these circumstances it would unjustly enrich [the daughter's] estate at the expense of [the mother] to allow the estate to enjoy a beneficial interest in the Property.

Id. at *5-6.

As Defendant points out in his brief, courts in other jurisdictions have held, under similar facts, that the debtor held mere legal title to property and that the transfer of such interest was not an avoidable transfer. For instance, in the case of Geremia v. Dwyer (In re Dwyer), 250 B.R. 472 (Bankr. D. R.I. 2000), the defendant purchased real property but put her son's (the debtor) name on the deed. For 22 years, the defendant paid all mortgage, tax, water, insurance and repair bills. She reported the rents and claimed the deductions on her tax returns. The debtor had marital problems, transferred title back to the defendant and filed bankruptcy 18 months later. The trustee sought to set aside the transfer as fraudulent. The

14

court held that the debtor's transfer of bare legal title to the property did not constitute an economic interest, and was not a fraudulent conveyance. Id. at 474-75.

In Jensen v. Gillman (In re Gillman), 120 B.R. 219 (Bankr. M.D. Fla. 1990) the debtor and his mother (the defendant) purchased a residential lot as joint tenants with right of survivorship. The defendant made all the payments to acquire the property and, later, all mortgage payments on the home built thereon. Five years later, the debtor, while insolvent, deeded his interest to the defendant for no consideration. After the debtor filed bankruptcy, the trustee sought to avoid the transfer under 11 U.S.C. § 548(a)(2). The court determined that the debtor only held bare legal title, that the transfer had no economic value and that the transfer was not fraudulent. Id. at 220.

In Rodriguez v. Nelabovige (In re Kirst), 559 B.R. 757 (Bankr. D. Col. 2016), the mother purchased property and placed title in her name, her daughter's name and her son-in-law's name (the debtor). She thereafter paid the property taxes and paid for new wiring, plumbing and appliances. Subsequently, on the advice of an estate planner, she asked her daughter and son-in-law to quit claim their interests back to her. They did so for "no consideration without hesitation because, 'it was not their property.'". Id. at 761. After the son-in-law filed bankruptcy, his trustee sought to avoid the transfer as a fraudulent conveyance. The court held that the debtor held bare legal title of no economic interest and the transfer was not avoidable. Id. at 765-66.

The undisputed facts in this case establish that, both before and after conveying the properties to Debtor, Defendant retained all the benefits and burdens of ownership including collection of rents, maintenance, payment of real estate taxes, insurance and repairs, and

Case 19-05001    Doc 65    Filed 09/29/21    Entered 09/30/21 08:57:12    Desc Main
Document      Page 16 of 20

reporting the properties on tax returns. Debtor continued to pay Defendant rent on Riverdale and never collected rent on it or the Fayetteville property even when legal title to the properties was in her name. Further, Defendant dealt with all tenant problems even when Debtor held title to the properties. Debtor testified "I was a renter and a renter only." Defendant decided when the properties would be reconveyed to him, prepared the quitclaim deeds, told Debtor to go to the courthouse and sign the deeds, and paid the recording fees. Under the facts in this case, Debtor held title to the properties in constructive trust for Defendant. Thus, Debtor held bare legal title and not equitable title.

Trustee asserts several arguments in opposition to imposition of a constructive trust. First, Trustee argues that the granting clauses of each quitclaim deed unequivocally transferred Defendant's full and complete interest without reservation or limitation. Trustee asserts that Defendant had no agreement with Debtor to hold the properties in trust or for how long the properties would be in Debtor's name and that no trust agreement or other document was made or recorded indicating that Defendant retained any interest in the properties. However, Georgia law is clear that a constructive trust does not depend upon the existence of an agreement between the parties. Rather, "the existence of a [constructive] trust is a question of fact." Kelley v. Speciale (In re Gregg), Case No. 11-40125, Adv. No. 11-4047, 2013 WL 3989061, at *19 (Bankr. M.D.Ga. July 2, 2013) (Laney, C.J.). "A constructive trust arises not from the intent of the parties, but by equity with respect to property acquired by fraud, or although acquired without fraud where it is against equity that the property should be retained by the one who holds it." Aetna Life Ins. Co. v. Weekes, 241 Ga. 169, 172, 244 S.E. 2d 46 (1978).

Trustee argues that Defendant should not be allowed to argue that he conveyed less than what the recorded deeds show. Otherwise, Trustee argues, duly signed and recorded deeds would have no meaning and any grantor could later contradict the written terms of an otherwise valid deed. Trustee relies on Hornsby v. Holt, 257 Ga. 341, 359 S.E.2d 646 (1987), where the Georgia Supreme Court stated:

> In the absence of fraud, accident or mistake, extraneous evidence cannot vary the terms of a written deed. See also Logan v. Bond, 13 Ga. 192 (1853); Tyson v. Henson, 159 Ga. App. 684 (285 SE2d 27) (1981). The written instrument is considered the true, complete understanding between the parties and, therefore, provides better evidence than can be furnished by parol. Rogers v. Atkinson, 1 Ga. 12 (1846). The rules of evidence forbid the introduction of parol evidence to show that the parties intended something other than that which they wrote. Id.

359 S.E. 2d at 648. However, Georgia courts have long held that, "[I]mplied trusts may be established by parol evidence, although the effect of such evidence is to alter or vary a written instrument, and although the [opposing party] sets up and insists upon the statute of frauds." Jenkins v. Lane, 154 Ga. 454(3)(a), 115 S.E. 126, 127 (1922). See also Jansen v. Jansen, 180 Ga. 318, 178, S.E. 654, 655-56 (1935); Sykes v. Reeves, 195 Ga. 587, 24 S.E. 2d 688, 691 (1943); Hancock v. Hancock, 205 Ga. 684, 54 S.E.2d 385, 389 (1945); O.C.G.A. § 53-12-133 (court may hear parol evidence on nature of transaction, the circumstances and the conduct of the parties, either to imply or rebut an implied trust). As stated above, the undisputed facts in this case establish that at all times, Defendant retained all benefits and burdens of ownership of the properties. Accordingly, equity requires that this Court recognize that Debtor held the properties in constructive trust for Defendant.

Next, Trustee argues that Defendant's assertion that he is the sole holder of equitable

17

title should be denied under the doctrine of unclean-hands because of Defendant's misconduct in trying to protect the properties from his wife if she went through with the divorce. Trustee relies upon Sparks v. Sparks, 256 Ga. 788, 353 S.E. 2d 508 (1987). There, John and Nancy purchased a marital residence that was titled in John's name. Later, John transferred title to Nancy for the purpose of shielding the home from a potential judgment creditor. At their divorce trial, Nancy contended that the house was an interspousal gift and not subject to equitable division. John contended that he did not intend the house to be a gift and insisted the transfer created a resulting trust[49] in his favor. The Georgia Supreme Court held that, assuming John's intent in transferring the home was fraudulent, his unclean hands would bar him from seeking the imposition of a resulting trust. Id. at 509-11. The court stated:

> The unclean-hands doctrine does not bar a litigant from seeking equitable relief unless the misconduct relates directly to the transaction concerning which relief is sought. John is thus barred from seeking a resulting trust in the residence, because his misconduct of fraudulently transferring the house to Nancy relates directly to the transaction from which he seeks relief–the transfer of the house placing title in Nancy.

Id. at 510 (internal citation omitted).

In this case, the facts are distinguishable. Here, Debtor voluntarily reconveyed the properties to Defendant almost ten years before she filed bankruptcy. Thus, unlike the Sparks case, Defendant is not asking the Court to force his transferee to recognize that she

---

[49] For purposes of this decision, a resulting trust serves a similar purpose as a constructive trust. See Whiten v. Murray, 267 Ga. App. 417, 599 S.E.2d 346, 350 (2004) ("[o]rdinarily distinctions are unnecessary since both are implied trusts and governed by the same rules").

held the properties in constructive trust for Defendant.  To the contrary, Debtor, recognizing that Defendant truly owned the properties, voluntarily reconveyed the properties to Defendant.  Thus, Defendant is not seeking relief with respect to the transfer of the properties to Debtor.  Rather, in a separate suit by Trustee, Defendant is simply asking the Court to recognize the equities on which Defendant and Debtor have already acted.  Cf. Cartledge v. McCoy, 98 Ga. 560, 25 S.E. 588 (1896) (where the grantor conveyed land to the grantee for the purpose of defrauding the grantor's creditors, and the grantee subsequently reconveyed the land to the grantor, the grantor was not prohibited from asserting his true ownership when the grantee subsequently filed an equitable petition); McCann v. Commissioner of Internal Revenue, 87 F.2d 275, 276 (6th Cir. 1937) (citing, in part, Cartledge v. McCoy, 98 Ga. 560, 25 S.E. 588 (1896)) ("while it is true that where property has been transferred by a husband to his wife in order to cheat, hinder, or delay creditors, equity will not compel a retransfer to the wrongdoer, it is also true that there is no rule of law or equity which prohibits the transferee from voluntarily making restoration").  Accordingly, Defendant is not barred by the unclean-hands doctrine from asserting that Debtor held the properties in constructive trust for Defendant.

Finally, Trustee argues that Defendant is equitably estopped to deny that he conveyed a fee simple interest to Debtor.  Georgia law provides that:

> In order for an equitable estoppel to arise, there shall generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his or her injury.

O.C.G.A. § 24-14-29.  "[I]njury is essential for an equitable estoppel." Claxton v. Adams,

357 Ga. App. 762, 767, 849 S.E.2d 494, 499 (2020) (quoting Blackburn v. Blackburn, 168 Ga. App. 66, 73(2), 308 S.E.2d 193, (1983).

Trustee does not assert, nor does the evidence show, that Debtor incurred any injury when Defendant transferred the properties to her. Trustee seeks to avoid this fact by arguing that Defendant's "wife would have been harmed by the transfers because she would have been required to undertake a separate action or amend her divorce complaint to set aside the transfers in order to assert her claim for '*an equitable division of all marital property.*'" Trustee's Br. ECF No. 54 at 15. (emphasis in original). However, even if injury to the wife would meet the injury requirement of equitable estoppel, the wife, in fact, did not suffer any injury. She did not have to take any legal action to have the properties returned to Defendant because they reconciled their marital problems, the divorce proceeding was disposed of and Debtor voluntarily reconveyed the properties in 2009. Accordingly, the doctrine of equitable estoppel does not apply in this case.

## CONCLUSION

The Court concludes that Debtor held the properties in constructive trust for Defendant. When she reconveyed the properties, she conveyed bare legal title only. Therefore, the transfer of the properties did not constitute a transfer of an interest of Debtor's property under 11 U.S.C. § 544. Accordingly, the Court grants Defendant's motion for summary judgment. A separate order consistent with this opinion will be entered.

*END OF DOCUMENT*